UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

---

MICHELLE L. MORTER,

    Plaintiff,

v.

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant,
_____/

Case No.  1:15-CV-0025

HON. ROBERT J. JONKER

## OPINION

This is a social security action brought under 42 U.S.C. § 405(g) seeking judicial review of a final decision of the Commissioner of the Social Security Administration (Commissioner).  Plaintiff Michelle Morter seeks review of the Commissioner's decision denying her claim for disability insurance benefits (DIB) and supplemental security income (SSI) under Titles II and XVI of the Social Security Act.

### STANDARD OF REVIEW

The Court's jurisdiction is confined to a review of the Commissioner's decision and of the record made in the administrative hearing process.  *See Willbanks v. Sec'y of Health & Human Servs.*, 847 F.2d 301, 303 (6th Cir. 1998).  The scope of judicial review in a social security case is limited to determining whether the Commissioner applied the proper legal standards in making her decision and whether there exists in the record substantial evidence supporting that decision.  *See Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989).  The Court may not conduct a *de novo* review of the case, resolve evidentiary conflicts, or decide questions of credibility.

*See Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). It is the Commissioner who is charged with finding the facts relevant to an application for disability benefits, and her findings are conclusive provided they are supported by substantial evidence. *See* 42 U.S.C. § 405(g).

Substantial evidence is more than a scintilla, but less than a preponderance. *See Cohen v. Sec'y of Health & Human Servs.*, 964 F.2d 524, 528 (6th Cir. 1992) (citations omitted). It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993). In determining the substantiality of the evidence, the Court must consider the evidence on the record as a whole and take into account whatever in the record fairly detracts from its weight. *See Richardson v. Sec'y of Health & Human Servs.*, 735 F.2d 962, 963 (6th Cir. 1984). The substantial evidence standard presupposes the existence of a zone within which the decision maker can properly rule either way, without judicial interference. *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (citation omitted). This standard affords to the administrative decision maker considerable latitude, and indicates that a decision supported by substantial evidence will not be reversed simply because the evidence would have supported a contrary decision. *See Bogle*, 998 F.2d at 347; *Mullen*, 800 F.2d at 545.

## PROCEDURAL POSTURE

Plaintiff was 30 years of age on the date of the Administrative Law Judge's (ALJ) decision. (PageID.54, 84.) She completed high school, attended one year of college, and was previously employed as a ride attendant, nurse assistant, and a demonstrator. (PageID.70, 107–09.) Plaintiff applied for benefits on July 25, 2012, alleging that she had been disabled since August 29, 2008, due to anxiety, depression, bipolar disorder, and obsessive compulsive disorder.

(PageID.293–300, 391, 395.) Plaintiff's applications were denied on October 22, 2012, after which time she requested a hearing before an ALJ. (PageID.207–27.) On July 24, 2013, Plaintiff appeared with her counsel before ALJ Carol Guyton for an administrative hearing with testimony being offered by Plaintiff and a vocational expert (VE). (PageID.80–115.) In a written decision dated August 23, 2013, the ALJ determined that Plaintiff was not disabled. (PageID.54–78.) On November 5, 2014, the Appeals Council declined to review the ALJ's decision, making it the Commissioner's final decision in the matter. (PageID.38–42.) Plaintiff subsequently initiated this action under 42 U.S.C. § 405(g).

## ALJ'S DECISION

The social security regulations articulate a five-step sequential process for evaluating disability. *See* 20 C.F.R. §§ 404.1520(a-f), 416.920(a-f).[1] If the Commissioner can make a dispositive finding at any point in the review, no further finding is required. *See* 20 C.F.R. §§ 404.1520(a), 416.920(a). The regulations also provide that if a claimant suffers from a nonexertional impairment as well as an exertional impairment, both are considered in determining

---

[1]
1. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. § 404.1520(b));

2. An individual who does not have a "severe impairment" will not be found "disabled" (20 C.F.R. § 404.1520(c));

3. If an individual is not working and is suffering from a severe impairment which meets the duration requirement and which "meets or equals" a listed impairment in Appendix 1 of Subpart P of Regulations No. 4, a finding of "disabled" will be made without consideration of vocational factors (20 C.F.R. § 404.1520(d));

4. If an individual is capable of performing work he or she has done in the past, a finding of "not disabled" must be made (20 C.F.R. § 404.1520(e));

5. If an individual's impairment is so severe as to preclude the performance of past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if other work can be performed (20 C.F.R. § 404.1520(f)).

the claimant's residual functional capacity (RFC). *See* 20 C.F.R. §§ 404.1545, 416.945.

Plaintiff has the burden of proving the existence and severity of limitations caused by her impairments and that she is precluded from performing past relevant work through step four. *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003). At step five, it is the Commissioner's burden "to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity (determined at step four) and vocational profile." *Id.*

ALJ Guyton determined Plaintiff's claim failed at the fifth step of the evaluation. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since her alleged disability onset date. (PageID.59.) At step two, the ALJ determined Plaintiff had the following severe impairments: (1) degenerative disc disease of the lumbar spine; (2) mild degenerative changes of the left knee; (3) affective and anxiety disorders; (4) personality disorder; and (5) asthma. (PageID.59.) At the third step, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or equaled the requirements of the Listing of Impairments. (PageID.60–62.) At the fourth step, the ALJ found that Plaintiff retained the RFC based on all the impairments:

> to lift and carry 20 pounds occasionally and 10 pounds frequently; stand/walk for 4 hours and sit for 6 hours per 8-hour workday; perform the postural positionings occasionally; avoid concentrated exposure to extreme cold, wetness, fumes, odors, dust, gases, or poor ventilation; avoid concentrated exposure to hazardous machinery and unprotected heights; simple, routine tasks involving no more than simple, short instructions and simple work related decisions with few work place changes; no contact with the general public; and occasional contact with coworkers and supervisors.

(PageID.62.) Continuing with the fourth step, the ALJ determined that Plaintiff was unable to perform any of her past relevant work. (PageID.70.)

At the fifth step, the ALJ questioned the VE to determine whether a significant number of jobs exist in the economy which Plaintiff could perform given her limitations. *See Richardson*, 735 F.2d at 964. The VE testified that there existed approximately 10,500 jobs in the lower peninsula of Michigan such as a light packager, production inspector, and office helper that an individual similar to Plaintiff could perform. (PageID.109–11.) This represents a significant number of jobs. *See Hall v. Bowen*, 837 F.2d 272, 274 (6th Cir. 1988); *McCormick v. Sec'y of Health & Human Servs.*, 861 F.2d 998, 1000 (6th Cir. 1988).

Accordingly, the ALJ concluded that Plaintiff was not disabled at any point from August 29, 2009, (the alleged onset date) through August 23, 2013, (Plaintiff's date last insured). (PageID.72.)

## DISCUSSION

Plaintiff's Statement of Errors raises the following claims of error:

1. The ALJ's determination that Plaintiff possessed the residual functional capacity to perform light work was not supported by substantial evidence;

2. The ALJ's credibility determination was not supported by substantial evidence; and

3. The ALJ's Step 5 determination that Plaintiff could perform other work was not supported by substantial evidence.

(PageID.782.) The Court will discuss the issues below.

**1.**

Plaintiff first argues that the RFC is unsupported by substantial evidence because the ALJ failed to properly consider three opinions in the record: a psychological opinion from her treating psychiatrist, Dr. Mohammad, an opinion from a nonexamining physician, Dr. Bowles, and

an opinion from Dr. Brooks, a consultative examiner.  (PageID.794–98.)  The Court disagrees.

        A.      Dr. Mohammed.

On May 21, 2013, Dr. Niaz Mohammed opined on Plaintiff's mental RFC, specifically commenting on Plaintiff's ability to perform in the areas of understanding & memory, sustained concentration & persistence, social interaction, and adaption. (PageID.681–84.)  Among other things, Dr. Mohammed opined that Plaintiff would be markedly limited in her ability to remember locations and work-like procedures, as well as understand and remember very short and simple instructions. (PageID. 681.)  Furthermore, Plaintiff would be markedly limited in her ability to work in coordination with, or in proximity to, others and in her ability to complete a normal workweek without interruptions. (PageID.681–82.)  Dr. Mohammed concluded Plaintiff would likely be absent from work three times a month. (PageID.682.)

The ALJ gave this opinion "little weight," noting that it was inconsistent with the doctor's own treatment notes, and other objective evidence.  Plaintiff definitely had family stressors, but did not have hallucinations, delusions, psychotic symptoms, suicidal ideations, or homicidal ideations; and did not require hospitalization. (PageID.69–70.)  In summarizing Dr. Mohammed's May 13, 2013, treatment notes, for example, the ALJ noted that Plaintiff herself reported "her medication regimen is working," and that Dr. Mohammed opined Plaintiff's "memory and abstract thinking were within normal limits . . . ." (PageID.68.)  In sum, the limitations in the assessment, the ALJ concluded, were more extreme than was supported by the doctor's treatment notes.  Plaintiff argues that as a treating physician, the ALJ was required to give controlling weight to Dr. Mohammed's opinion, unless the ALJ provided "good reasons" for doing so.  Plaintiff argues that the reasons provided by the ALJ are unsupported by substantial evidence.

The treating physician doctrine recognizes that medical professionals who have a long history of caring for a claimant and her maladies generally possess significant insight into her medical condition. *See Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994). An ALJ must, therefore, give controlling weight to the opinion of a treating source if: (1) the opinion is "well supported by medically acceptable clinical and laboratory diagnostic techniques" and (2) the opinion "is not inconsistent with the other substantial evidence in the case record." *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 375–76 (6th Cir. 2013) (quoting 20 C.F.R. § 404.1527). It appears undisputed that Dr. Mohammed qualifies as a treating physician.

The deference accorded to such opinions is appropriate, however, only where the particular opinion "is based upon sufficient medical data." *Miller v. Sec'y of Health & Human Servs.*, 1991 WL 229979 at *2 (6th Cir., Nov. 7, 1991) (citing *Shavers v. Sec'y of Health & Human Servs.*, 839 F.2d 232, 235 n.1 (6th Cir. 1987)). The ALJ may reject the opinion of a treating physician where such is unsupported by the medical record, merely states a conclusion, or is contradicted by substantial medical evidence. *See Cohen*, 964 F.2d at 528; *Miller*, 1991 WL 229979 at *2 (citing *Shavers*, 839 F.2d at 235 n.1); *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286–87 (6th Cir. 1994).

If an ALJ accords less than controlling weight to a treating source's opinion, the ALJ must "give good reasons" for doing so. *Gayheart*, 710 F.3d at 376. Such reasons must be "supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Id.* This requirement "ensures that the ALJ applies the treating physician rule and permits meaningful review of the ALJ's application of the rule." *Id.* (quoting

*Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004)). Simply stating that the physician's opinions "are not well-supported by any objective findings and are inconsistent with other credible evidence" is, without more, too "ambiguous" to permit meaningful review of the ALJ's assessment. *Id.* at 376–77.

If the ALJ affords less than controlling weight to a treating physician's opinion, the ALJ must still determine the weight to be afforded such. *Id.* at 376. In doing so, the ALJ must consider the following factors: (1) length of the treatment relationship and frequency of the examination, (2) nature and extent of the treatment relationship, (3) supportability of the opinion, (4) consistency of the opinion with the record as a whole, (5) the specialization of the treating source, and (6) other relevant factors. *Id.* (citing 20 C.F.R. § 404.1527). While the ALJ is not required to explicitly discuss each of these factors, the record must nevertheless reflect that the ALJ considered those factors relevant to his assessment. *See, e.g.*, *Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007); *Undheim v. Barnhart*, 214 F. App'x 448, 450 (5th Cir. 2007).

Dr. Mohammed's treatment notes consistently demonstrate that Plaintiff was not as limited as the doctor later alleged. Throughout Dr. Mohammed's treatment notes, Plaintiff describes stress that is largely associated with her two special needs children. However, at most visits Dr. Mohammed found that Plaintiff had a normal memory and abstract, fair insight and judgment. (PageID.581, 583–84, 586, 589, 612.) Plaintiff stated that medication helped. (PageID.583.) While there is one instance of an overdose, it does not appear to have been planned. (PageID.589.) In sum, these notes do not support a finding that Plaintiff was further limited than that reflected in the RFC. Accordingly, the ALJ provided good reasons, supported by substantial evidence, for giving less than controlling weight to Dr. Mohammed's opinion.

8

Plaintiff claims the ALJ nonetheless erred by failing to properly address the factors listed above in determining what weight to assign to the doctor's opinion. The Court is not convinced. At the beginning of the ALJ's discussion, the ALJ noted her obligation to consider the evidence under 20 C.F.R. §§ 404.1527, 416.927. (PageID.62.) The ALJ also explicitly discussed several of the enumerated factors, primarily whether the opinion was "well-supported by medically acceptable clinical and laboratory diagnostic techniques," whether it was "inconsistent with the other substantial evidence in [the] case record," the frequency of visits, and how the evidence in the record informed the ALJ's determinations on each of these factors. (PageID.64, 69–70.) Regardless of the other factors the ALJ was required to consider, the opinions and evidence mentioned thus far provide substantial evidence for the ALJ's decision to accord Dr. Mohammed's opinion little weight. The record supports the ALJ's findings that the doctor's notes were inconsistent with the later opinion. Accordingly, Plaintiff's claim of error on this point is rejected.

      B.      *Dr. C. Kenneth Bowles*

On August 17, 2011, Dr. C. Kenneth Bowles, a medical consultant, opined that Plaintiff "appears to retain the ability to understand, remember, concentrate, persist with at least moderately complex tasks. She appears to be able to interact appropriately in situations which do not require unusually close interaction with the general public, coworkers and supervisors, and to be able to adapt to her environment consistent with these parameters." (PageID.480.) Plaintiff claims that reversal is required because the ALJ failed to discuss this opinion.

While the ALJ indeed failed to discuss Dr. Bowles' opinion, the failure of the ALJ to do so does not help Plaintiff's case. This is so because Dr. Bowles' opinion is consistent with the RFC. (PageID.62.) In fact, it actually suggests Plaintiff is capable of more than the ALJ found in

9

the RFC. While the ALJ did not explain the weight given to the opinion under SSR 96-6p[2], the fact that Plaintiff's RFC is more restrictive than Dr. Bowles' opinion renders the error harmless in this instance. *See Mays v. Colvin*, 739 F.3d 569, 578 (10th Cir. 2014); *see also Johnson v. Astrue*, No. 1:09 CV 2959, 2010 WL 5559542, at *7 (N.D. Ohio Dec. 3, 2010) (citing *McAnally v. Comm'r of Soc. Sec.*, 241 F. App'x 515, 518–520 (10th Cir. 2007) for the proposition that an ALJ commits harmless error in failing to follow SSR 96–6p when a doctor's assessment of the claimant's limitation is consistent with the ALJ's determination). Accordingly, Plaintiff's claim is rejected.

    C.    Dr. Brooks

On October 10, 2012, Ms. Kimberly Lem, a limited licensed psychologist, filled out a psychiatric/psychological medical report regarding Plaintiff's mental limitations. The report was cosigned by Dr. William Brooks, a licensed psychologist, on October 17, 2012. (PageID.624–30.) The two psychologists gave Plaintiff a guarded prognosis. They assigned a GAF score of 50, and concluded that Plaintiff "appeared to have anxiety, which may disrupt her ability to work effectively with other people, including co-workers, supervisors and the public. However, she was very clear thinking, organized in her thinking and lucid. Her motivation appeared poor and her insight limited. She appeared capable of performing simple and repetitive tasks but does not appear motivated to do so. She would likely struggle with complex or detailed tasks and she appeared to be quite sensitive to common stressors. (PageID.629.) The ALJ gave "great weight" to the opinion, stating that it was "generally consistent with the consultative examination and with the remainder of the objective

---

[2]"Administrative law judges and the Appeals Council may not ignore [consultants'] opinions and must explain the weight given to these opinions in their decisions." SSR 96-6P, Titles II & XVI: Consideration of Admin. Findings of Fact by State Agency Med. & Psychological Consultants & Other Program Physicians & Psychologists at the Admin. Law Judge & Appeals Council, 1996 WL 374180, at *1 (S.S.A. July 2, 1996).

evidence." (PageID.69.)

The gist of Plaintiff's claim is that the ALJ mischaracterized the two psychologists' opinion, and selectively relied upon the portions of the report that tended to show Plaintiff was not disabled, while discounting those portions that tended to show Plaintiff was disabled. (PageID.797–98.) Specifically, Plaintiff argues that the ALJ improperly discounted the GAF score of 50 and the examination's conclusion that Plaintiff would struggle with her ability to work with other people, including co-workers, supervisors, and the public. (PageID.629.) The Court finds no error.

GAF scores are subjective rather than objective assessments and are not entitled to any particular weight. *See Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 511 (6th Cir. 2006); *see also Johnson v. Comm'r of Soc. Sec.*, 535 F. App'x 498, 508 (6th Cir. 2013) ("[N]o particular amount of weight is required to be placed on a GAF score.") (citing *Howard v. Comm'r of Soc Sec.*, 276 F.3d 235, 241 (6th Cir. 2002)); *Taylor v. Comm'r of Soc. Sec.*, No. 1:11–cv–1308, 2013 WL 1305291, at *9 (W.D. Mich. Mar. 28, 2013) ("The ALJ is not required 'to put stock in a GAF score in the first place.'"); *Edwards v. Comm'r of Soc. Sec.*, 654 F. Supp. 2d 692, 696 n.3 (W.D. Mich. 2009) (collecting cases). "GAF examinations measure psychological, social, and occupational functioning on a continuum of mental-health status from 0 to 100, with lower scores indicating more severe mental limitations." *White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 276 (6th Cir. 2009). "GAF is a clinician's subjective rating of an individual's overall psychological functioning. A GAF score may help an ALJ assess mental RFC, but it is not raw medical data. Rather, it allows a mental health professional to turn medical signs and symptoms into a general assessment, understandable by a lay person, of an individual's mental functioning." *Kennedy v. Astrue*, 247 F. App'x 761, 766 (6th Cir.

2007). The DIAGNOSTIC & STATISTICAL MANUAL OF MENTAL DISORDERS' (DSM–IV's) explanation of GAF scale indicates that "a score may have little or no bearing on the subject's social and occupational functioning." *Kornecky*, 167 F. App'x at 511; *see Oliver v. Comm'r of Soc. Sec.*, 415 F. App'x 681, 684 (6th Cir. 2011). "Significantly, the SSA has refused to endorse the use of the GAF scale." *Bennett v. Comm'r of Soc. Sec.*, No. 1:07–cv–1005, 2011 WL 1230526, at *3 (W.D. Mich. Mar. 31, 2011). GAF scores "have no direct correlation to the severity requirements of the mental disorder listings." *DeBoard v. Comm'r of Soc. Sec.*, 211 F. App'x 411, 415 (6th Cir. 2006); *see Richardson v. Comm'r of Soc. Sec.*, No. 1:12–cv–776, 2013 WL 5211245, at *5 (W.D. Mich. Sept. 16, 2013). Accordingly the ALJ did not err regarding the GAF scores.

Plaintiff also fails on her claim that the ALJ improperly discredited her subjective statements and the examination's opinion that Plaintiff's anxiety would disrupt her ability to work with others. While it is true that the Ms. Lem and Dr. Brooks found Plaintiff's anxiety would disrupt her ability to work with others, and that she would struggle with complex or detailed tasks, this opinion is not inconsistent with the RFC, which limited Plaintiff to simple, routine tasks and to no contact with the general public and only occasional interaction with co-workers and supervisors. (PageID.62.) RFC is the most, not the least, a claimant can do despite her impairments. 20 C.F.R. § 404.1545(a); *Griffeth v. Comm'r of Soc. Sec.*, 217 F. App'x 425, 429 (6th Cir. 2007) While the psychologists found Plaintiff would have difficulty working with others, and was not motivated to perform simple, repetitive tasks, they did not state Plaintiff was unable to do so. Plaintiff therefore can show no error.

Accordingly, Plaintiff's first claim of error regarding the above opinions is rejected.

**2.**

Plaintiff's second claim of error centers on the ALJ's treatment of the lay witness opinions in the record as well as the ALJ's treatment of Plaintiff's credibility. While the ALJ's treatment of the lay witness opinions could have been better conducted, the Court does not find error requiring reversal.

    *A.*    *Lay Witnesses*

On February 7, 2012, Jessica Reeves, Plaintiff's neighbor, filled out a third-party function report regarding Plaintiff's limitations. (PageID.379–90.) An identical report was filled out on September 14, 2012, by Matthew Aitken, Plaintiff's boyfriend. (PageID.429–39.) Both reports closely parallel each other. For example, both Ms. Reeves and Mr. Aitken opined that Plaintiff did not work well with others, needed to be in control, and was oftentimes tired. (PageID.379, 429.) Both individuals stated that Plaintiff spent her day preparing her children for school, did some cleaning, and cooked supper for her children. (PageID.380, 430.) Both also noted that Plaintiff needed little assistance with her personal care. (PageID.380, 430.) The two individuals believed Plaintiff was able to do laundry, and clean the house, and Ms. Reeves further noted Plaintiff was able to mow the lawn. (PageID. 381, 431.) The two also opined that Plaintiff could drive a car, go shopping, and handle her finances. (PageID.382, 432.) They also found that Plaintiff had difficulties in her memory, concentration, in completing tasks, in following instructions, and in getting along with others. (PageID.384, 434.) Plaintiff's argument is that because the ALJ did not explicitly state that she considered these third-party reports and did not give them some specific amount of weight, that is a violation of the ALJ's duty to consider all of the relevant evidence. (PageID.799.)

Opinions expressed by non-treating sources such as a claimant's neighbor and boyfriend are not entitled to any deference and the ALJ is not required to articulate good reasons for discounting such. *See, e.g., Smith v. Comm'r of Soc. Sec.*, 482 F.3d 873, 876 (6th Cir. 2007). Instead, the ALJ is simply required to consider such opinions and accord such the weight she finds appropriate. *See, e.g., Engebrecht v. Commissioner of Social Security*, 572 F. App'x. 392, 397–98 (6th Cir., July 14, 2014.) "[W]here an ALJ discusses at length the objective medical evidence, he is not required to include a separate review of a third party statement." *Dixon v. Colvin*, 2015 WL 5722794, *7 (E.D. Ky. Sept. 29, 2005). Additionally, "while it is true that the ALJ must consider all of the evidence, reversible error does not occur unless it appears from the record that the ALJ simply failed to take into account at all some item of evidence which materially bears on the ultimate resolution of the case." *McKay v. Comm'r of Soc. Sec.*, No. 2:14–cv–1061, 2015 WL 6447739, at *6 (S.D. Ohio Oct. 26, 2015). Here, the ALJ indicated that she had considered all the evidence, indicating that she also considered the third-party function reports. (PageID.57, 61.)

It is true that the ALJ does not expressly call out the third-party statements and assign a particular weight to them, or expressly reject them. That would have been preferable to satisfy the Sixth Circuit's direction that "[i]f lay witness testimony is provided, the ALJ cannot disregard it without comment, and must give reasons for not crediting the testimony that are germane to each witness," *Maloney v. Comm'r of Soc. Sec.*, 480 F. App'x. 804, 810 (6th Cir. 2012). But, the Court finds any error to be harmless on this record. As Plaintiff admits, the two third-party reports–one from her boyfriend, and the other from a neighbor–were largely consistent with her own testimony at the administrative hearing. (PageID.799.) They therefore add nothing materially new to the record in light of the ALJ's exhaustive review of the objective medical evidence. It was the

objective medical record that led the ALJ to discount Plaintiff's reported severity of symptoms, and the two additional lay witness opinions are subject to the same critique. Once the ALJ determined that the objective medical record required a discounting of Plaintiff's own descriptions, the same logic requires discounting the two friends who described the same limitations Plaintiff did. *See Maloney*, 480 F. App'x at 810 ("if the ALJ erroneously disregards a lay witness's testimony, the error is harmless if 'no reasonable ALJ, when fully crediting the testimony, could have reached a different disability determination.'" *Maloney*, 480 F. App'x at 810 (quoting *Stout v. Comm'r of Soc. Sec.*, 454 F.3d 1050, 1056 (9th Cir. 2006)). Remand, simply to have the ALJ explicitly say so, would elevate form over substance. The ALJ is not required to explicitly discuss every piece of evidence. *Higgs v. Bowen*, 880 F.2d 860, 864 (6th Cir. 1988); *Waters v. Astrue*, No. 2:10-213-DCR, 2011 WL 3847421, at *4 (E.D. Ky. Aug. 26, 2011).

### B. Plaintiff's Credibility.

At the administrative hearing, Plaintiff testified that she could not work because of poor communication skills, anxiety, and a lack of an ability to remember things. (PageID.89.) Plaintiff argues that she is entitled to relief because the ALJ's rationale for discounting her testimony is not supported by substantial evidence.

As the Sixth Circuit has long recognized, "pain alone, if the result of a medical impairment, *may* be severe enough to constitute disability." *King v. Heckler*, 742 F.2d 968, 974 (6th Cir. 1984) (emphasis added); *see also*, *Grecol v. Halter*, 46 F. App'x. 773, 775 (6th Cir., Aug. 29, 2002) (same). As the relevant Social Security regulations make clear, however, a claimant's "statements about [her] pain or other symptoms will not alone establish that [she is] disabled." 20 C.F.R. § 404.1529(a); *see also*, *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997)

15

(quoting 20 C.F.R. § 404.1529(a)); *Hash v. Comm'r of Soc. Sec.*, 309 F. App'x 981, 989 (6th Cir., Feb. 10, 2009). Instead, as the Sixth Circuit has established, a claimant's assertions of disabling pain and limitation are evaluated pursuant to the following standard:

> First, we examine whether there is objective medical evidence of an underlying medical condition. If there is, we then examine: (1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

*Walters*, 127 F.3d at 531 (citations omitted). This standard is often referred to as the *Duncan* standard. *See Workman v. Comm'r of Soc. Sec.*, 105 F. App'x 794, 801 (6th Cir. 2004).

Accordingly, as the Sixth Circuit has repeatedly held, "subjective complaints may support a finding of disability only where objective medical evidence confirms the severity of the alleged symptoms." *Id.* (citing *Blankenship v. Bowen*, 874 F.2d 1116, 1123 (6th Cir. 1989)). However, where the objective medical evidence fails to confirm the severity of a claimant's subjective allegations, the ALJ "has the power and discretion to weigh all of the evidence and to resolve the significant conflicts in the administrative record." *Workman*, 105 F. App'x at 801 (citing *Walters*, 127 F.3d at 531).

In this respect, it is recognized that the ALJ's credibility assessment "must be accorded great weight and deference." *Workman*, 105 F. App'x at 801 (citing *Walters*, 127 F.3d at 531); *see also*, *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 536 (6th Cir. 2001) ("[i]t is for the [Commissioner] and his examiner, as the fact-finders, to pass upon the credibility of the witnesses and weigh and evaluate their testimony"). It is not for this Court to reevaluate such evidence anew, and so long as the ALJ's determination is supported by substantial evidence, it must stand. The ALJ found Plaintiff's subjective allegations to not be fully credible, a finding that should not be lightly

disregarded. *See Varley v. Sec'y of Health & Human Servs.*, 820 F.2d 777, 780 (6th Cir. 1987). In fact, as the Sixth Circuit recently stated, "[w]e have held that an administrative law judge's credibility findings are virtually unchallengeable." *Ritchie v. Comm'r of Soc. Sec.*, 540 F. App'x 508, 511 (6th Cir. 2013) (citation omitted).

In support of his decision to discount Plaintiff's credibility, the ALJ noted that the medical record did not support Plaintiff's allegations. (PageID.63.) Specifically, the ALJ noted that though Plaintiff said she could not get along with others, she was able to care for her special needs children and take them to their appointments. There were no reports that Plaintiff had difficulty getting along with her children's physicians. (PageID.96–97.) The ALJ also noted Plaintiff provided inconsistent statements regarding the reason for the termination of her employment. At the administrative hearing, Plaintiff testified that she left work after a verbal altercation with her supervisor. (PageID.87.) However, on her disability report, Plaintiff stated the reason she left work was that her son had recently returned home, and that she left work to care for him. (PageID.227.) The ALJ further noted that Dr. Mohammed consistently found Plaintiff had a normal memory and abstract, fair insight and judgment. (PageID.581, 583–84, 586, 589, 612.). Regarding the physical evidence, the ALJ noted a musculoskeletal examination of Plaintiff's lower extremity revealed a good range of motion, and normal muscle strength. On July 15, 2011, she had a negative straight leg raising test. (PageID.471.) Drug testing also showed that Plaintiff was non-compliant with her medications. (PageID.516, 527.)

Plaintiff argues that the ALJ's reasons for discounting her credibility are unsupported by substantial evidence because the ALJ failed to account for the fact that her boyfriend and neighbor provided substantial assistance in caring for her children, that the ALJ did not note that Plaintiff also

had a positive straight leg test, and that the ALJ's reliance on the two instances when she was noncompliant with her medications was in error as no other physician noted she was noncompliant with her medication. The Court is not convinced.

The ALJ explicitly noted that Plaintiff's boyfriend provided assistance. (PageID.63.) But the record shows that Plaintiff did many tasks on her own. At the hearing, Plaintiff stated that she played with her kids and took them to doctor's appointments, which is consistent with the ALJ's statement that she cares for her two children and takes them to appointments. (PageID.63, 96.) Moreover, both Plaintiff's boyfriend and her neighbor reported that Plaintiff cared for her children. (PageID.380, 430). As to Plaintiff's second point regarding leg tests, the ALJ noted that only "some" examinations were negative, indicating that some were positive. (PageID.63.) Again, an ALJ is not required to explicitly discuss every piece of evidence. *Higgs*, 880 F.2d at 864. Finally, the ALJ did not err in noting that Plaintiff had been non-compliant with her medications. *Hardaway v. Secy' of Health & Human Servs.*, 832 F.2d 922, 927 (6th Cir. 1987.) Plaintiff herself stated that she was not taking her medication regularly. (PageID.517.) Plaintiff argues that there were times where she was consistent with her medications, but it is the ALJ's role to weigh the evidence and resolve inconsistencies, as was done here. *Blair v. Comm'r of Soc. Sec.*, No. 98–3581, 1999 WL 196497, *2 (6th Cir. March 26, 1999). Accordingly, substantial evidence supports the ALJ's reasons for discounting Plaintiff's subjective allegations, and Plaintiff's second claim of error is rejected.

**3.**

Plaintiff finally claims that because the ALJ failed to properly consider and adopt the above mentioned opinions, as well as her own subjective complaints, the Commissioner's step 5 conclusion that Plaintiff can perform a significant number of jobs is unsupported by substantial

evidence. As noted above, the step five finding was based on the VE's response to a hypothetical question posed by the ALJ. A VE's testimony in response to an accurate hypothetical may provide substantial evidence at step five that the claimant is able to perform a significant number of jobs. *Felisky v. Bowen*, 35 F.3d 1027, 1036 (6th Cir. 1994). This claim of error is related to the above claims in that Plaintiff argues the ALJ's hypothetical was inaccurate because it did not incorporate some of the opinions in the record. An ALJ is required to incorporate only those limitations which she finds credible and supported by the record into the hypothetical. *See Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1235 (6th Cir.1993). That is what the ALJ did in this case. To the extent Plaintiff argues the ALJ should have adopted opinions that found Plaintiff was further impaired, the Court has already rejected Plaintiff's claims regarding these opinions. Accordingly, the VE's testimony provided substantial evidence supporting the ALJ's conclusion that there were a significant number of jobs Plaintiff could perform, and Plaintiff's claim of error is rejected.

## CONCLUSION

For the reasons set forth herein, the Commissioner's decision will be **AFFIRMED.** A separate judgment shall issue.


Dated:     March 17, 2016              /s/ Robert J. Jonker
                                       ROBERT J. JONKER
                                       CHIEF UNITED STATES DISTRICT JUDGE